### TERRY et al. v. SPEARMAN.*
### (No. 503–3921.)

(Commission of Appeals of Texas, Section A. March 12, 1924.)

1. **Fraudulent conveyances 121—Issue authorizing jury to test conveyance by debtor by rules applicable only to preferred creditors held erroneous.**

In action for conversion of a sawmill where evidence showed that plaintiff's insolvent assignor transferred the sawmill to her in consideration of $1,500, $500 of which she paid him in cash and $1,000 by credit on a debt, it was error to submit a special issue authorizing the jury to test the conveyance by the rules applicable to preferred creditors instead of volunteer purchasers.

2. **Fraudulent conveyances 121—Sales favored when made to creditor without other consideration.**

Sales, the validity of which is questioned because made to defraud creditors, fall into three classes: First, where purchaser is a volunteer and not a creditor; second, where purchaser is also a creditor and the debt is the sole consideration; and, third, where the purchaser is a creditor and the debt is only part of the consideration, sales of the second class being more favored.

3. **Fraudulent conveyances 121—One seeking to secure debt, but combining character of purchaser with that of creditor, treated as purchaser.**

One who seeks to secure his debt by taking a transfer from his debtor, but who goes further and combines the character of a volunteer purchaser with that of a creditor, is to be treated merely as a purchaser; and the reception of the property must be for the sole

purpose of securing the debt to entitle him to treatment as a preferred creditor.

**4. Chattel mortgages �köⁿ159—Mortgagor ordinarily permitted to retain possession.**

Ordinarily, mortgagor of personal property is permitted to retain possession as well as title until default in payment of the debt or obligation.

**5. Chattel mortgages �köⁿ162, 249—Generally after default mortgagee entitled to possession.**

Generally, after default in payment of the debt or obligation, mortgagee is entitled to take possession, or he may proceed with foreclosure.

**6. Chattel mortgages ⊦köⁿ177(1)—When mortgaged property destroyed, mortgagee may recover value of debt.**

When mortgaged property has been wrongfully taken or destroyed, mortgagee or holder of the lien may proceed at any time to recover the value of the property up to the amount of his debt, on the ground that his security has been impaired or destroyed.

**7. Chattel mortgages ⊦köⁿ177(4)—Refusal to admit evidence of existence of mortgage on property alleged to have been converted held error.**

In action for conversion of a sawmill sold under execution against a former owner who had mortgaged the property to a third person who had filed suit for foreclosure before the levy, plaintiff's right to recover, if at all, was limited to the value of the use and possession of the property during the time she was wrongfully deprived of it, and it was error to refuse to hear proof as to the existence of the mortgage lien and the rights of all the parties.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit for conversion by Mattie Spearman against W. S. Terry and others. Judgment for plaintiff was affirmed by the Court of Civil Appeals (246 S. W. 103), and defendants bring error. Reversed and remanded.

F. H. Prendergast, of Marshall, and J. H. Benefield, of Jefferson, for plaintiffs in error.

Schluter & Singleton, of Jefferson, for defendant in error.

GERMAN, P. J. Plaintiff in error T. D. Rowell, having a judgment in the sum of $538.48 against John Spearman, caused an execution to issue thereon, and on July 25, 1919, the same was levied by W. S. Terry, sheriff of Marion county, on a certain sawmill situated in Marion county, Tex. After due notice, sale was made and Rowell became the purchaser. On September 19, 1919, defendant in error Mattie Spearman filed this suit in the district court of Marion county against T. D. Rowell and the sheriff, alleging that the sawmill property which had been levied upon and sold was her property, and sued for the conversion of such property,

claiming damages in the sum of $2,500. Rowell and Terry answered, alleging that the property, at the time it was levied upon and sold, was the property of John Spearman and not Mattie Spearman; that the claim of Mattie Spearman to said property was under and by virtue of a pretended sale to her by John Spearman, and which was made to hinder, delay, and defraud the creditors of the said John Spearman. It was also claimed that said property, at the time of the levy and sale, was covered by a chattel mortgage in favor of A. M. Rhyne in excess of the real value. The case was submitted on special issues and judgment rendered in favor of defendant in error for $1,000 damages, the value of the property at the time of levy and sale. This judgment was affirmed by the Court of Civil Appeals. 246 S. W. 103.

Two questions of law are presented for our consideration. The first relates to error on the part of the trial court in submitting special issue No. 2 and the refusal to give an additional instruction in connection therewith.

The evidence showed that some time prior to the levy of the execution in July, 1919, John Spearman had executed a bill of sale of this sawmill property to Mattie Spearman, his sister. The jury found that John Spearman at that time was indebted to Mattie Spearman in the sum of $3,000. The property was found to be worth $1,500, but it was undisputed that as a consideration for the transfer Mattie Spearman gave John Spearman credit for $1,000 on his debt and paid him the sum of $500 in cash. The evidence does not disclose what became of this $500. It can hardly be questioned that at the time of the alleged transfer John Spearman was insolvent, and Mattie Spearman must have known this. Special issue No. 2 and the instruction of the court in connection therewith is as follows:

"Question No. 2. Did John Spearman transfer the property to Mattie Spearman with the intent to hinder, delay, or defraud his creditors?

"In connection with question No. 2, you are instructed that John Spearman, although he may have been in failing circumstances, had the right to prefer Mattie Spearman over other creditors. If you find that he was indebted to said Mattie Spearman at the time he made the transfer, he had the right to convey his property to Mattie Spearman for the payment of his indebtedness to her, and the said Mattie Spearman had the right to receive such property in payment of her debt, even though she might have known that the intention and effect of such conveyance was to hinder and delay other creditors of the said John Spearman in the collection of their debt; but in such case the purchase must have been open, and no more property must have been taken by Mattie Spearman than was reasonably necessary to have paid her debt."

⊦köⁿFor other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] Plaintiffs in error objected to the giving of this charge, and requested that it be modified by adding after the word "debt" the words "that was canceled by her transfer." They also requested the court to submit a special issue as follows:

"Was John Spearman induced to make the transfer by the $500 cash then paid by Mattie Spearman?"

This was refused. It is at once apparent that the trial court took the position that Mattie Spearman could be regarded as a preferred creditor of John Spearman, although only a part of the consideration for the transfer was credited on the debt due her. In other words, the trial court seems to have been of the opinion that the payment of the $500 in cash as a part of the consideration was immaterial, provided she obtained no more property than was necessary to pay her entire debt. In this we think the court was wrong.

[2] Sales, the validity of which are brought in question on the ground that they were made for the purpose of defrauding creditors, may be said to fall in three classes:

First, where the purchaser is a volunteer and not a creditor.

Second, where the purchaser is also a creditor, and the debt is the sole consideration.

Third, where the purchaser is a creditor, and the debt is only a part of the consideration.

The same rules apply to purchasers of the first and third class, but those of the second class are more favored.

[3] It is an established rule that one who seeks to secure his debt by taking a transfer from his debtor goes further and combines the character of a volunteer purchaser with that of a creditor; that is, if he buys and pays partly by giving credit on his debt and partly in cash, there being no necessity for his doing so in order to secure his debt, he is to be treated merely as a purchaser, and the rules governing purchasers must be applied to him. In order that the purchaser may be treated as a preferred creditor, the reception of the property must be for the sole purpose of securing the debt. In other words, the "value of the goods conveyed must be reasonably proportionate to the amount of the debt extinguished by the conveyance." Sanger Bros. v. Colbert, 84 Tex. 668, 19 S. W. 863; Allen v. Carpenter, 66 Tex. 138, 18 S. W. 347; Greenleve v. Blum, 59 Tex. 124; Jackson v. Bank & Trust Co., 53 Fla. 265, 44 South. 516; Brinson v. Edwards, 94 Ala. 447, 10 South. 220; Rosenheim v. Flanders, 114 Iowa, 291, 86 N. W. 294; McRae v. Sleeper, 188 Mich. 168, 153 N. W. 1082; Hyde v. Bloomington, 23 Misc. Rep. 728, 51 N. Y. Supp. 1025; Allen v. Kane, 79 Wash. 248, 140 Pac. 534.

We are not prepared to hold, under the facts of this case, that the transfer from John Spearman to Mattie Spearman was fraudulent and void as a matter of law, solely by reason of the payment of a part of the consideration in cash; but we think it clear that the trial court erred in submitting special issue No. 2 as was done, because it authorized the jury to test the conveyance by the rules applicable to preferred creditors, when she should have in fact been treated as a volunteer purchaser. The principles applicable to the three classes of purchasers mentioned above are fully discussed in the case of Jackson v. Citizen Bank & Trust Co., supra.

On the trial of the case plaintiffs in error offered to prove the existence of a mortgage upon the sawmill property given by John Spearman to A. M. Rhyne prior to the alleged transfer by John Spearman to Mattie Spearman; the plaintiffs in error having pleaded the existence of this mortgage and that Mattie Spearman's interest in the property was only an equity of redemption. On objections of defendant in error this proof was not allowed. Motion for new trial in this cause was heard and considered by the court December 6, 1921. At the hearing of this motion it was proven that the mortgage given by John Spearman to Rhyne had been foreclosed by judgment of the district court of Marion county November 29, 1921; the judgment being in the sum of $11,358.43, which was far in excess of the value of the property. Although this was set up as a ground for a new trial, the court overruled the motion and permitted the judgment for $1,000 in favor of defendant in error to stand.

[4-7] The mortgage from Spearman to Rhyne not being in the record, we cannot determine fully the rights of the parties in all particulars, but must apply general principles. Ordinarily, the mortgagor of personal property is permitted to retain the possession as well as the title until default is made in payment of the debt or obligation which the mortgage is given to secure. It is also generally true that after default the mortgagee is entitled to take possession, or he may proceed with foreclosure. We think it is a well-recognized general rule that when mortgaged property has been wrongfully taken or destroyed, the mortgagee or holder of the mortgage lien may proceed at any time to recover for the value of the property up to the amount of his debt, on the ground that his security has been impaired or destroyed. No one would question his right to do this after default by the mortgagor. On the other hand, the mortgagor or one holding under him would have the right to proceed to recover the value of the equity of redemption or the value of the use and possession of the property during the time he was entitled to hold it. It is unnecessary to decide whether or not a situation could arise where the mortgagor would be entitled to sue for the

entire value of the property, as such situation is not presented here. If it be true, as alleged, that Rhyne had filed suit for foreclosure of the mortgage at the time of the levy in July, 1919, then it must be true that default had theretofore been made in payment of the debt secured by the mortgage. This being the case, Rhyne had the right to prosecute suit for the value of the property, on the theory of wrongful conversion; and the right of Mattie Spearman to recover, if at all, was limited to the value of the use and possession of the property during the time she was wrongfully deprived of such use and possession, as there was no equity of redemption in her favor. In our opinion, therefore, the trial court erred in refusing to hear proof as to the existence of the mortgage lien and the rights of all the parties. See Brooks v. Lewis, 83 Tex. 335, 18 S. W. 614, 29 Am. St. Rep. 650; Towell v. Smith (Tex. Civ. App.) 55 S. W. 186.

It is unnecessary to discuss other assignments raised by plaintiffs in error, and we recommend that the judgment of the Court of Civil Appeals and of the district court be reversed, and the cause remanded.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.